James A. Biglow, Respondent, v. Edward Carney and John Hart, Appellants.

Kansas City Court of Appeals, June 15, 1885.

1. Practice—Measure of Damages.—In the absence of evidence showing an agreement to pay a particular sum for services rendered, or that the services rendered were reasonably worth that sum, it is error in the court to instruct on the basis of an assumed particular sum as the measure of plaintiff's recovery.

Appeal from Livingston Circuit Court, Hon. E. J. Broaddus, J.

*Reversed and remanded.*

Statement of case by the court.

This suit was instituted before a justice of the peace, upon the following statement:

"Plaintiff states that on the —— day of March, 1879, the defendants, in consideration of plaintiff's promise to work for them at teaming and hauling, promised and agreed, to pay plaintiff the sum of $2.50 per day for hauling, with team, and $2.75 per day for scraping dirt. That plaintiff has duly performed all the conditions of said contract, on his part, and worked for defendants to the amount of $33. That defendants paid plaintiff the sum of $25.00, and that there still remains due and unpaid plaintiff for said work the sum of $7.80, which defendants have neglected to pay, etc."

The plaintiff had judgment before the justice, whereupon the defendants appealed to the circuit court, where the case was tried by a jury and plaintiff again got judgment for $2.50 of the sum sued for.

The plaintiff testified as follows : " Some time in the month of February, 1879, I learned that defendants wanted men and teams to work on railroad work, near Conception, Mo.; that they would pay $2.75 for teams to scrape dirt, and $2.50 for wagons and teams ; also, that they would furnish free transportation for men and teams from Chillicothe, Mo., to Pattonsburg, Mo. On the morning that the car went up from Chillicothe, I was on hand. Mr. Ed. Carney, one of the defendants, was there. The man who appeared to be acting as foreman said to Carney, 'What about Biglow?' and Carney said 'let Biglow go.' I, with others, went up to Pattonsburg, Mo., where we were ordered to load up with lumber for Conception, the place where we were to begin work, as I understood it. I hauled the load up ; I went to work on the works, and worked eleven days, at $2.50, and one day and nine hours at $2.75. The defendants paid me $25.20, leaving a balance due me of $5.75, as I count it. I heard of the 10 per cent. discount a few days before I quit work—that any man who quit before the 13th day of any month, and *demanded* his pay before the 15th, would be discounted 10 per cent. I heard it talked of by the men on the works. The defendants, when I quit and demanded my pay, discounted the sum of 10 per cent.

CROSS-EXAMINED :—" I had no talk with Carney, one

of the defendants, in Chillicothe before going to work for him. I do not think he explained to me the contract—that I would have to haul a load of lumber from Conception to the works for our free transportation from Chillicothe to Pattonsburg. I know Mr. Pierce. He was paymaster on the works named. He loaned me $1.00 while I was at this work, but I did not say to him at any time, 'Pierce, you are not going to discount me 10 per cent. on this dollar, are you?' I got the dollar, but nothing was said about 10 per cent. I quit and demanded my pay before pay day, as they called it, viz. : the 15th of the month. I said nothing to Pierce about deducting the 10 per cent. He deducted $2.80. I did not demand, at the time I got my pay, the $5.00 for two days hauling lumber. I had talked with Carney about it before, and he said if he paid any one he would pay me, and he refused to pay me. I did not ask the foreman at Pattonsburg, the place where we loaded lumber, about getting pay for it. We would have traveled the same road from Pattonsburg to the works whether we hauled or not. I never said, in a conversation, the first or second night out from Pattonsburg, in presence and hearing of Joe. Engleman, Young Bartlett, and one Mr. Beaer, that I had agreed to haul the lumber without pay. I know a man by the name of Pollock ; he, with others, and the defendant, Hart, were along on the trip. I did not say to any of these men that I had agreed to haul the lumber for my transportation from Chillicothe to Pattonsburg. I had a talk with Hart, on the trip, about the expenses, but that is all. I did not ask the foreman, at Pattonsburg, nor anybody else, as to whether I was to get pay for hauling the lumber or not. I supposed I would."

The plaintiff offered the following instructions, which the court gave, to which action of the court the defendants excepted :

"1. The jury are instructed, that, if they believe plaintiff worked for defendant two days hauling lumber from Pattonsburg to Conception, for which plaintiff received no pay from defendants, and that at the

time of settlement with defendants it was not considered and settled by the parties on their settlement, they will find for the plaintiff such sum as they may deem plaintiff entitled to at $2.50 per day, unless the jury further believe that plaintiff did contract with defendants to do such hauling in consideration of their transportation to Pattonsburg.

"4. The jury are instructed, if they believe from the evidence the plaintiff did not contract and agree with defendant to haul lumber or supplies from Pattonsburg to Conception, in consideration of free transportation from Bedford to Pattonsburg, they will find for plaintiff the amount claimed, $5.00, for such labor."

B. B. GILL, for the appellants.

I. The instructions for plaintiff were erroneous. There is no evidence in the record going to show that the hauling was worth five dollars, or any other sum. The court *assumed* that it was worth five dollars, and so told the jury. *Ins. Co. v. Seminary*, 52 Mo. 481 ; 58 Mo. 421.

II. The giving of inconsistent instructions is error. Such were given here—one for plaintiff and one for defendants, as to knowledge of the rule of discount in case of quitting before the time named. *Henschen v. O'Bannon*, 58 Mo. 289.

III. The court erred in refusing defendant's instructions. They were based on the evidence. Plaintiff swore that there was no express contract, and the other evidence shows that there was no implied contract. *Allen, Adm'r, v. Richmond College*, 41 Mo. 302.

IV. The court should have, on motion of defendants, set the verdict aside, upon the weight of evidence, and because the jury entirely disregarded the law in the instructions. The case should be reversed upon the *evidence* presented by the record.

V. The record shows such an overwhelming preponderance of evidence against the finding of the jury as to lead to the conclusion that the jury was swayed by passion or prejudice. This being the case, this court

should interfere.   *Nantrian v. R. R.*, 78 Mo. 44 ; *Whitsett v. Ransom*, 79 Mo. 258.

No brief on file for respondent.

Opinion by ELLISON, J.

A perusal of the entire evidence in this cause fails to show any agreement on the part of appellants to pay plaintiff two dollars and fifty cents per day for hauling, or any other sum.   In the absence of a contract price per day the law would imply a promise to pay what it was reasonably worth.   No evidence is preserved in the record tending to show what it was reasonably worth to do the hauling plaintiff alleges was done by him. Notwithstanding this absence of testimony the court in instruction number one, tells the jury to find for plaintiff at the rate of two dollars and fifty cents per day.   And in instruction number four the jury are told in express terms, that if they believe plaintiff did not agree to haul the lumber in consideration of free transportation on the cars, they would find for plaintiff the sum of five dollars. In the absence of evidence showing an agreement to pay five dollars, or that the hauling was reasonably worth five dollars, we are at a loss to know how that particular sum should be set down as the measure of plaintiff's recovery.

The judgment is reversed and the cause is remanded. All concur.